

FILED
DEC 09 2011

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| CAROL O'NEAL, as Personal Representative of the Estate of LANNY O'NEAL, deceased.<br><br>Plaintiff,<br><br>vs.<br><br>REMINGTON ARMS COMPANY, LLC, SPORTING GOODS PROPERTIES, INC., and E. I. DuPONT DE NEMOURS AND COMPANY,<br><br>Defendants. | Case No. 11-4182<br><br>COMPLAINT |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff Carol O'Neal, as Personal Representative of the Estate of Lanny O'Neal by and through her attorneys, and for her claim for relief against Defendants, Remington Arms Company, LLC, Sporting Goods Properties, Inc., and E. I. DuPont De Nemours and Company, states and alleges as follows:

### PARTIES

1. Plaintiff Carol O'Neal (hereinafter "Plaintiff") is a resident of Brandon, Minnehaha, County, South Dakota. She is the Personal Representative of the Estate of Lanny O'Neal, wife of deceased person Lanny O'Neal and the natural mother of their three children.

2. Defendant Remington Arms Company, LLC. (hereinafter "Remington") is a Delaware Corporation and is authorized to do business in the State of South Dakota. Service should be made upon its registered agent, CT Corporation System 319 S. Coteau Street Pierre, SD 57501-3108 unless Defendant Remington Arms Company, LLC, waives service pursuant to Rule 4(d), F.R.Civ. P.

3. Defendant Sporting Goods Properties, Inc. (hereinafter "SGPI") is a Delaware Corporation not authorized to do business in the State of South Dakota so service should be

made at its corporate office at 1007 N. Market Street, M10608 Wilmington, Delaware 19801 or upon the South Dakota Secretary of State pursuant to Rule 4(h)(1)(B) and SDCL §47-8-17.

4. Defendant E.I. Dupont de Nemours, Inc. (hereinafter "DuPont") is a Delaware Corporation and is not authorized to do business in the State of South Dakota so service should be made at its corporate office at 1000 Market Street, Room 8042, DuPont Building, Wilmington, Deleware, 19898 or upon the South Dakota Secretary of State pursuant to Rule 4(h)(1)(B) and SDCL §47-8-17.

## JURISDICTION, VENUE AND SERVICE OF PROCESS ALLEGATIONS

5. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. Sec. 1332 in that the Plaintiff is a citizen of the State of South Dakota, and that the Defendants are all corporate citizens of the State of Delaware, and the amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars.

6. Venue is proper within the Southern Division because Plaintiff is a resident of Minnehaha County, South Dakota, and the incident which gives rise to this complaint occurred within Dewey County, South Dakota.

## COMMON ALLEGATIONS

7. Plaintiff and her children reside at 212 Seth Street, Brandon, SD 57000-2533 and are citizens of the State of South Dakota.

8. Defendants, Remington, DuPont and SGPI were, and are now engaged in the business of designing, manufacturing, assembling, distributing and selling firearms, and in this regard did design, manufacture, distribute, sell and, place into the stream of commerce, the Remington Model 700, .243 caliber bolt action rifle including the action, fire control system, and safety, bearing Serial Number 6329626 (hereinafter "rifle"), knowing and expecting that said rifle would be used by consumers and around members of the general public.

9. Prior to November 30, 1993, DuPont owned 100% of the stock in the company

known as Remington Arms Company, Inc. (now SGPI). On or about November 30, 1993, RACI (Remington Arms Acquisition Corporation, Inc.) purchased from DuPont substantially all of the income producing assets of Remington Arms Company, Inc. (now known as SGPI), including the corporate name. The company formerly known as Remington Arms Company, Inc. changed its name to Sporting Goods Properties, Inc., and RACI changed its name to Remington Arms Company, Inc. SGPI retained certain non-income producing assets, some with significant environmental and other liabilities such that its net worth was reduced to a small fraction of its former so that SGPI may not be able to pay reasonable judgments in this and similar litigation.

10.     At all times pertinent to this action Defendants, SGPI and DuPont were and are the alter ego of each other and in essence constitute one legal entity which in which SGPI operates as a division of DuPont. The separate incorporation of SGPI is a sham in that it is merely a corporate veil which insulates DuPont from liability for products manufactured and sold by SGPI. DuPont exerted, and currently exerts extreme influence, complete dominion and/or absolute control over the corporate activity and function of SGPI. DuPont's continued operation of SGPI as a separate legal entity is a subterfuge designed to defeat public convenience, justify a wrong, perpetrate a fraud and/or otherwise work an injustice on Plaintiffs herein and the general public. The conduct of DuPont and/or SGPI has harmed or will harm Plaintiffs and the general public, justifying piercing of the corporate veil resulting in DuPont being liable for the acts and omissions of SGPI as they are in reality one legal entity.

11.     All Defendants are so intertwined contractually for the liabilities, past, present and future, of each other that they are, in fact, one entity and therefore, the corporate veils of each company should be pierced to properly ascertain the responsible parties for the allegations contained herein. The Asset Sale/Purchase Agreement transferring the assets of SGPI to Remington and various revised or supplemental agreements spreads responsibility and authority for product liability claims among the three Defendants as it is unclear who bears the contractual liability for this claim.

12.     Remington and/or Dupont expressly and impliedly agreed to assume certain debts and responsibilities, including the product liability of SGPI by the terms of the Asset/Sale Purchase Agreement as well as the continuing relationship between Remington, DuPont and SGPI.

Consequently, DuPont and/or Remington are the corporate successors to the product liability claims asserted, now and in the future, against SGPI, including this particular lawsuit.

13. Remington continues in the design, manufacture, distribution and sale of all Remington Arms product lines including the Remington Model 700 bolt action rifle, without any significant changes. Remington maintains the same plants, employees, organization, contracts, customers, suppliers, advertising, products and name acquired in the asset purchase. Remington acquired the entire company from SGPI through an asset/sale purchase in order to avoid and/or limit the liability resulting from an outright purchase of the stock from DuPont. Consequently, DuPont and/or Remington are the corporate successors to the product liability claims asserted, now and in the future, against SGPI, including this particular lawsuit.

14. Remington, DuPont and SGPI acted fraudulently with respect to the asset/sale purchase in that its purpose was to avoid and/or limit the responsibility of DuPont and/or Remington for the debts of SGPI, particularly its product liability. Consequently, DuPont and/or Remington are the corporate successors to the product liability claims asserted, now and in the future, against SGPI, including this particular lawsuit.

15. At all times pertinent to this action SGPI was an agent of DuPont acting in the course and scope of its agency relationship thereby making its principal, DuPont, liable for all of SGPI's acts and omissions, either by exercising direct control over SGPI, or by adopting and ratifying SGPI's acts or omissions.

16. At all times pertinent to this action, agents of DuPont, acting within the course and scope of their agency relationship, controlled SGPI, thereby making SGPI's acts and omissions those of their principal, DuPont, either by exercising direct control over SGPI, or by adopting and ratifying SGPI's acts or omissions.

17. On November 9, 2008, Plaintiff's husband Lanny L. O'Neal (hereinafter "O'Neal" or "Plaintiff's decedent") was hunting deer with his hunting party near Eagle Butte, Dewey County, South Dakota. This party included four men who were sitting in the cab of a truck on private property owned by one of the hunters, Bob Booth. The truck where this incident occurred was being driven by Ted Miller. Lanny O'Neal was sitting in the front passenger seat. In the rear seat Dr. Greg Fleitz was sitting behind the driver and Mark Ritter was sitting behind O'Neal. There

were 4 other hunters in another vehicle following this truck.

18. Mark Ritter was hunting with O'Neal's Remington Model M700 rifle that day. As they were driving in the field, the men spotted a deer. Ted Miller stopped the truck. Mark Ritter opened the vehicle door and reached down to pick up the M700 rifle that was sitting in the floor of the truck. As he picked up the rifle by the stock, he used his thumb to push the safety to off. The trigger was not pulled or contacted in any manner, but instead the rifle fired on safety release, a phenomenon Defendants refer to as "FSR". The bullet from the rifle traveled through the seat cushion and struck O'Neal in the upper back traveling through his stomach, spleen and left lung. The men immediately called 911 and drove toward the town of Eagle Butte. They met an ambulance who took over care of O'Neal and he was taken to the Indian Health Center. Lanny O'Neal was pronounced dead at 4:35 that afternoon as a result of the gunshot wound.

19. Lanny L. O'Neal was 40 years old at the time of his death. He was married to Carol O'Neal and had 3 natural children. At the time of this filing, one child is yet a minor.

20. Remington Arms Co., Sporting Goods Properties, Inc., and E.I. DuPont de Nemours and Company are collectively referred to herein as "Defendants."

21. As Personal Representative of the Estate of Lanny O'Neal, Plaintiff Carol O'Neal is bringing this action to recover damages from Defendants for the wrongful death of Lanny L. O'Neal pursuant to SDCL § 21-5. Damages include funeral expenses, lost of future income and support, Lanny O'Neal's physical pain and suffering, pecuniary losses, the emotional pain, suffering, mental anguish and grief, loss of support, care, comfort and companionship, loss of society, advice, assistance and protection and other general, special and punitive damages experienced by Decedent's legal heirs in an amount to be determined by the jury at trial of this action.

## COUNT I
## STRICT LIABILITY

22. Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1 through 21 of the Complaint as though set forth at length herein.

23. The Remington Model 700 bolt action rifle, as designed, manufactured, sold and distributed by Defendants was in a defective condition, unreasonably dangerous to the user, consumer or bystander, their property and the public in general.

24. Mark Ritter used the rifle in a reasonably foreseeable manner.

25. The rifle as designed, manufactured, sold and distributed by Defendants was in substantially the same condition as when it was manufactured by Defendants.

26. The rifle was defective and unreasonably dangerous when it was sold by Defendants and at the time it left their possession and control.

27. Plaintiff's decedent was injured as a direct and proximate result of the defective design, manufacture, sale and distribution of the rifle.

28. Plaintiff has suffered and is entitled to recover damages from Defendants as a direct and proximate result of the defective design, manufacture, sale and distribution of the rifle.

29. Plaintiff's decedent suffered damages as a result of his injuries in advance of his death, including conscious pain and suffering and expectation of his impending death. Plaintiff is entitled to recover damages on behalf of Plaintiff's decedent.

30. Defendants' conduct in the design, manufacture, sale and distribution of the Remington Model 700 bolt action rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights and safety of users and consumers of the rifle and the general public, justifying punitive or exemplary damages.

## COUNT II
## STRICT LIABILITY FAILURE TO WARN

31. Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1 through 30 of the Complaint as though set forth at length herein.

32. The Remington Model 700 bolt action rifle was in a defective and unreasonably dangerous condition because of the failure to warn of its propensity to unexpectedly discharge without pulling the trigger and the failure to properly instruct about its care and maintenance.

33. Neither Ritter nor Plaintiff's decedent had any knowledge of such defective

6

conditions present in the rifle and had no reason to suspect it was unreasonably dangerous prior to the inadvertent discharge which killed Lanny O'Neal.

34. As a direct and proximate result of the failure to warn of the rifle's propensity to unexpectedly discharge without pulling the trigger and failure to properly instruct about its care and maintenance, Plaintiff has suffered and is entitled to recover damages from Defendants.

35. Plaintiff's decedent suffered damages as a result of his injuries in advance of his death, including conscious pain and suffering and expectation of his impending death. Plaintiff is entitled to recover damages on behalf of Plaintiff's decedent.

36. Defendants' conduct in the failure to warn of the Remington Model 700 bolt action rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights and safety for users and consumers of the rifle and the general public, justifying punitive or exemplary damages.

## COUNT III
### NEGLIGENT DESIGN AND MANUFACTURE

37. Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1 through 36 of the Complaint as though set forth at length herein.

38. Defendants negligently designed, manufactured, sold and distributed the Remington Model 700 bolt action rifle in its defective and unreasonably dangerous condition.

39. Defendants were negligent in one or more of the following respects:
   a. In designing a fire control with a "trigger connector";
   b. In designing a fire control with manufacturing tolerance build up;
   c. In designing a fire control that failed to include preset engagement between the trigger connector and the sear;
   d. In designing a fire control that was susceptible to the accumulation of debris, lubrication build up, and/or the accumulation of rust;
   e. In designing a fire control that was susceptible to adjustment;
   f. In designing a fire control that was susceptible to the presence of

    manufacturing burrs or debris;

 g. In designing a fire control that will fire without a pull of the trigger;

 h. In designing a fire control that will fire when the safety is shifted from the "safe" to the "fire" position;

 i. In designing a fire control that will fire when the bolt is cycled;

 j. In designing a fire control that will "jar off";

 k. In designing a fire control that uses improper materials, including "powdered metal" for the sear that are unusually susceptible to normal wear and tear;

 l. In manufacturing a fire control that has burrs or manufacturing debris within the fire control;

 m. In manufacturing a fire control without proper or adequate quality control procedures or checks;

 n. In failing to warn users and handlers of the rifles of the potential for firings in the absence of a pull of the trigger;

 o. In failing to warn users and handlers of the risks and hazards of improper maintenance of the rifle;

 p. In failing to warn users and handlers of the risks and hazards of adjustment of the fire control;

 q. In failing to inform or advise users and handlers of the proper procedures for maintenance of the rifle;

 r. In failing to inform or advise users and handlers of the proper procedures for adjustments to the fire control.

  40. As a direct and proximate result of Defendants' negligent design, manufacture, sale and distribution of the rifle, Plaintiff has suffered and is entitled to recover damages from Defendants.

  41. Plaintiff's decedent suffered damages as a result of his injuries in advance of his death, including conscious pain and suffering and expectation of his impending death. Plaintiff is entitled to recover damages on behalf of Plaintiff's decedent.

  42. Defendants' conduct in the design, manufacture, sale and distribution of the

Remington Model 700 bolt action rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights and safety of users and consumers of the rifle and the general public, justifying punitive exemplary damages.

## COUNT IV
## NEGLIGENT FAILURE TO WARN

43. Plaintiff incorporates herein by reference each and every allegation set forth herein in Paragraphs 1 through 42 of the Complaint as though set forth herein.

44. Defendants negligently failed to warn of the Remington Model 700 bolt action rifle's propensity to discharge unexpectedly without pulling the trigger and failed to properly instruct about its care and maintenance.

45. Neither Ritter nor Plaintiff's decedent had any knowledge of said defective conditions present in the rifle and had no reason to suspect it was unreasonably dangerous prior to the inadvertent discharge which killed Lanny L. O'Neal.

46. As a direct and proximate result of Defendants' negligent failure to warn of the rifle's propensity to unexpectedly discharge and failure to properly instruct about its care and maintenance, Plaintiff has suffered and is entitled to recover damages from Defendants.

47. Plaintiff's decedent suffered damages as a result of his injuries in advance of his death, including conscious pain and suffering and expectation of his impending death. Plaintiff is entitled to recover damages on behalf of Plaintiff's decedent.

48. Defendants' conduct in the design, manufacture, sale and failure to warn of the Remington Model 700 bolt action rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights of safety of users and consumers of the rifle and the general public, justifying punitive or exemplary damages.

## COUNT V
## **SPOILATION OF EVIDENCE**

49. Plaintiff incorporates herein by reference each and every allegation set forth herein in Paragraphs 1 through 48 of the Complaint as though set forth herein.

50. Defendants knew that various items of evidence, including but not limited to customer complaints, gun examination reports, committee minutes, internal memoranda, testing results, tested rifles, returned rifles and fire control systems removed from returned rifles would be relevant and probative, albeit damaging, in litigation regarding whether or not the Remington Model 700 bolt action rifle is defective and unreasonably dangerous.

51. Defendants had a duty to preserve said evidence for use in litigation so that a fair and just resolution of the issues can be reached with all relevant evidence.

52. Defendants breached their duty owed to Plaintiff and Plaintiff's decedent in this litigation, as well as to other past and future Plaintiffs with similar claims, by destroying relevant evidence including, but not limited to that evidence set forth above.

53. Defendants destroyed incriminating evidence with full knowledge of past, pending, and future claims regarding the Remington Model 700 so as to prevent Plaintiffs in this and other similar litigation from obtaining access to same.

54. Defendants next adopted a written Record Retention Policy upon which they relied to destroy incriminating evidence based upon a stated destruction schedule with full knowledge that said evidence was relevant to past, pending, and future Remington Model 700 claims.

55. Defendants destroyed relevant evidence in contravention of their Record Retention Policy. Defendants knew that said evidence established that the Remington Model 700 is defective and that Defendants knew of said defects.

56. Defendants knew that if the evidence which has been destroyed was made available through the course of litigation discovery to Plaintiffs handling this and other similar Model 700 cases, Defendants' respective liability would be enhanced or confirmed, and their exposure to both actual and punitive damages would be significantly greater.

57. This destruction of relevant evidence occurred when legal proceedings regarding the

Remington Model 700 were pending or reasonably foreseeable and after Defendants knew of the defective condition of the Model 700 and its liability for same.

58. Defendants' conduct in destroying evidence was done with actual knowledge in order to avoid liability for both actual and punitive damages.

59. Defendants' conduct was reprehensible in that Defendants intended to: deny Plaintiff a fair and impartial trial with all relevant evidence; defraud this Court and its officers; continue the production of its defective Model 700 rifle; ignore the danger resulting from millions of Remington Model 700 rifles already in the hands of the general public; secure profits from their activities; and to generally deny justice to Plaintiff and others similarly situated.

60. American jurisprudence through the common law provides redress for grievances in this Court in the form of either; monetary damages assessed against Defendants for the reduction in value of Plaintiff's claims or the increase in the cost of proving them as the result of the destruction of relevant evidence or equitable relief by striking Defendants pleadings, prohibiting their arguments or resolving issues to which destroyed evidence would be probative in favor of Plaintiff; or whatever other action the court deems just and proper.

61. Plaintiff seeks monetary damages or in the alternative injunctive relief as the Court deems just and proper after review of the facts and the nature of evidence which has been destroyed.   WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

    A.  For compensatory, special and general damages against the Defendants, jointly and severally, in a fair and reasonable amount as the jury deems just and equitable under the circumstances and commensurate with Plaintiff's losses, in excess of Seventy-Five Thousand Dollars ($75,000).

    B.  For exemplary or punitive damages against the Defendants, jointly and severally, in an amount necessary to deter or prevent similar conduct in the future.

    C.  For attorney's fees and costs incurred in this action as permitted by law.

    D.  For interest from the date of the accident as permitted by law.

    E.  For such further and additional relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff prays that the causes of action alleged herein be tried in this Court before a jury of her peers.

RESPECTFULLY SUBMITTED this 8th day of December, 2011.

*Timothy W. Monsees by John P. Blackburn*
**Timothy W. Monsees**
**MONSEES, MILLER, MAYER,**
**PRESLEY & AMICK**
A Professional Corporation
Timothy W. Monsees, MO # 31004
4717 Grand Avenue, Suite 820
Kansas City, MO 64112
Tele: 816-361-5550
Fax: 816-361-5577

AND LOCAL COUNSEL

*John P. Blackburn*
**John P. Blackburn**
**BLACKBURN & STEVENS, PROF. L.L.C.**
100 W. 4th Street
Yankton, SD 57078
Tele: (605) 665-5550
Fax: (605) 665-3524
jblaw@iw.net