UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| CAROL O'NEAL, as Personal Representative of the Estate of Lanny O'Neal, Deceased, | ) ) ) ) | CIV. 11-4182-KES |
| Plaintiff, | ) ) | ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY |
| vs. | ) ) ) | JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| REMINGTON ARMS COMPANY, LLC, SPORTING GOODS PROPERTIES, INC., and E.I. DUPONT DE NEMOURS AND COMPANY, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff, Carol O'Neal, as personal representative of the estate of Lanny O'Neal, deceased, brought an action against defendants, Remington Arms Company, LLC, Sporting Goods Properties, Inc., and E.I. Dupont De Nemours and Company, alleging strict liability (product defect), strict liability (failure to warn), negligent design and manufacture, negligent failure to warn, and spoliation of evidence. O'Neal's spoliation of evidence claim was dismissed following a motion by defendants because it is not an independent cause of action.

Defendants previously moved for summary judgment while discovery was still occurring. The court denied defendants' motion at that time, in part

because additional discovery may provide O'Neal sufficient facts to support her claims.

Discovery has now concluded, and there are three motions pending before the court. O'Neal moves for partial summary judgment on the issue of product defect, arguing issue preclusion applies. Defendants move to exclude the testimony of O'Neal's expert witness, Charles Powell, and also move for summary judgment on all of O'Neal's claims. For the following reasons, O'Neal's motion for partial summary judgment is denied, defendants' motion to exclude the testimony of Powell is denied as moot, and defendants' motion for summary judgment is granted.

## BACKGROUND

The pertinent facts, viewed in the light most favorable to O'Neal, the nonmoving party, are as follows:

Carol O'Neal is the widow of Lanny O'Neal and is a resident of Brandon, South Dakota. Defendants are business entities registered in the state of Delaware and are in the business of selling firearms, one of which was the Remington Model 700, .243 caliber bolt action rifle that is at the center of this litigation.

On November 9, 2008, Lanny O'Neal was deer hunting with friends near Eagle Butte, South Dakota. Lanny loaned Mark Ritter, one of the hunters, a Remington Model 700 rifle to use hunting that day. The hunters were traveling in a pickup truck when they came across a deer. At the time, Ritter was sitting

in the back seat of the truck and Lanny sat in the front seat. After the truck stopped, Ritter began exiting the truck so that he could shoot the deer. While Ritter was exiting, the rifle discharged when Ritter moved the safety from the "on" position to the "off" position, and Lanny was shot and killed. O'Neal alleges that the rifle was defective and that the defect was the reason the rifle discharged, causing the death of her husband.

The rifle was manufactured in 1971. Doug Swanson, Lanny's step-father, acquired the rifle in the early-to-mid 1980s from the estate of his mother's boyfriend, Albert Mcilvenna. Swanson does not know when or how Mcilvenna acquired the rifle nor does he know whether the rifle was ever modified or altered prior to his acquisition of the rifle. Swanson would occasionally loan the rifle to others and loaned it to Lanny in approximately 2005 or 2006. Lanny remained in possession of the rifle until the day of the accident. The rifle was never altered or modified from the time Swanson acquired it until the day of the accident, and Swanson did not have a gunsmith examine the rifle while he owned it.

Following Lanny's death, Shawn O'Neal contacted the law firm of Robins, Kaplan, Miller & Ciresi, LLP (Robins Kaplan), in Minneapolis, Minnesota. In December 2008, Shawn and plaintiff, Carol O'Neal, met with attorney Chris Messerly of Robins Kaplan to discuss the circumstances of Lanny's death. After this meeting, Robins Kaplan acquired the rifle from the FBI but never had the rifle inspected. On March 26, 2010, plaintiff and her friend, Joe Weir,

retrieved the rifle from Robins Kaplan after it was determined that no legal action would be taken by Robins Kaplan on behalf of plaintiff.[1] O'Neal then asked Weir to destroy the rifle because she did not want the rifle that killed her husband to be in her house. Weir complied with O'Neal's request and destroyed the rifle.

O'Neal brought this product liability action against defendants on December 9, 2011, after hearing about a news report detailing certain problems with Remington rifles.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact.") (internal quotations omitted). The moving party must inform the court of the basis for its motion and also identify the portion of the record that shows that there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). Once the moving party has met its initial burden, the "nonmoving party may not 'rest on mere allegations or denials, but must

---

[1] O'Neal also met with a different attorney who declined to represent her after she met with Robins Kaplan. The second attorney, however, never obtained the rifle from Robins Kaplan.

4

demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). For purposes of summary judgment, the facts, and inferences drawn from those facts, are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

The court applies the standard and burden associated with the applicable substantive law to determine whether a genuine issue for trial exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). South Dakota substantive law applies in this diversity action. *Hammonds v. Hartford Fire Ins. Co.*, 501 F.3d 991, 996 n.6 (8th Cir. 2007).

## DISCUSSION

## I.   O'Neal's Motion for Partial Summary Judgment

O'Neal moves for partial summary judgment on the issue of product defect, arguing that collateral estoppel (also known as issue preclusion) precludes defendants from relitigating the issue of whether their product—the Model 700 rifle—was defective.

The application of issue preclusion in diversity cases is determined according to state law. *Royal Ins. Co. of Am. v. Kirksville Coll. of Osteopathic Med., Inc.*, 304 F.3d 804, 807 (8th Cir. 2002). Under South Dakota law, "[i]ssue preclusion refers to the effect of a judgment in foreclosing relitigation of a

matter that has been litigated and decided." *Nemec v. Goeman*, 810 N.W.2d 443, 446 (S.D. 2012). "Issue preclusion only bars a point that was *actually and directly in issue* in a former action and was judicially passed upon and determined by a domestic court of competent jurisdiction." *Id.* For issue preclusion to apply, the following four elements must be met:

> (1) The issue decided in the prior adjudication was identical with the one presented in the action in question;
>
> (2) There was a final judgment on the merits;
>
> (3) The party against whom issue preclusion is asserted was a party or in privity with a party to the prior adjudication; and
>
> (4) The party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the prior adjudication.

*SDDS, Inc. v. South Dakota*, 569 N.W.2d 289, 294 (S.D. 1997).

In support of her argument, O'Neal directs the court to three cases in which judgments were entered against defendant Remington Arms Company. The first, *Lewy v. Remington Arms Company, Inc.*, 836 F.2d 1104 (8th Cir. 1988), is a case from the Western District of Missouri. In *Lewy*, plaintiffs alleged claims for strict liability (design defect), strict liability (failure to warn), and negligent failure to warn after a Remington Model 700 bolt-action rifle discharged upon release of the safety. *Id.* at 1106. The jury returned a verdict in favor of plaintiffs on all three claims, and the district court entered judgment. The Eighth Circuit Court of Appeals, however, remanded the case for a new trial after it concluded that the district court erred in admitting

6

evidence of similar incidents involving a Remington Model 600 rifle. Because the case was remanded for a new trial, the determination in *Lewy* was not a final judgment on the merits. Issue preclusion, therefore, does not apply.

Next, *Campbell v. Remington Arms Company*, 958 F.2d 376 (9th Cir. 1992) (unpublished), is a case from the District of Alaska. In *Campbell*, the jury found against Remington on plaintiff's product liability claim, in favor of Remington on plaintiff's negligence claim, and also found plaintiff was not comparatively negligent. *Id.* at *1. To find in favor of plaintiff on the product liability claim, the court instructed the jury that the plaintiff was required to prove, among other things, that the product was defective. Docket 55 at 32. The court further instructed the jury that a product is defective if (1) the product failed to perform safely as an ordinary consumer would expect, <u>or</u> (2) the design of the product caused the injury, and the benefits of the design did not outweigh the risk of danger inherent in the design. Docket 55 at 33. The jury returned a special verdict, finding that the product made by Remington—a Model 700 barreled action[2]—was defective, but the verdict form did not identify under which prong the finding was based. Docket 56 at 3-4. The jury could have found either that the specific rifle in that case had a manufacturing defect, i.e., a particular item in a line of products was defective, or a design

---

[2] A barreled action includes essentially all parts of a rifle except the rifle stock. Docket 55 at 26. The rifle at issue in *Campbell* underwent some significant changes from the time it left Remington's possession, including having the barrel replaced and having certain parts nickel plated. *Id.*

7

defect, i.e., where an entire line of products all have the same defect. Because a manufacturing defect claim involves a specific product, issue preclusion would only apply in later litigation if the later suit involved the exact same product. Because the Model 700 rifle involved in this suit is a different rifle than the rifle in *Campbell*, the issue decided in *Campbell* is not identical to the one presented here, which bars application of issue preclusion. Additionally, South Dakota law recognizes the complete defense of post-sale modifications, alterations, and product misuses. *See* SDCL 20-9-10. The *Campbell* jury was not instructed on product misuse because the injury occurred before Alaska's Tort Reform Act took effect. *Campbell*, 958 F.2d 376, at *2. Therefore, the issue decided in *Campbell* was not identical to the one presented in this case.

The third case relied on by O'Neal is *Collins v. Remington Arms Company, Inc.*, No. 91-11-10856-CV (D. Maverick Cnty, Tex., 293d Jud. D. May 1, 1994), a state court case out of Texas. Docket 56-3. While the facts in *Collins* are not entirely clear, it appears the plaintiff alleged that the rifle discharged while it was being either loaded or unloaded and that the rifle was defective because it did not provide a safety feature that would prevent such a discharge. *Collins v. Remington Arms Co.*, JVR No. 161125, 1994 WL 866816 (Tex. Dist. 1994). Here, O'Neal claims the rifle is defective because it discharged when the safety was moved from on to off, not while the rifle was being loaded or unloaded. Therefore, the defect at issue here is different than the defect that was litigated in *Collins*. Issue preclusion, thus, does not apply.

O'Neal has the burden to prove that the specific Model 700 rifle at issue here is defective.[3] O'Neal has not identified a final judgment that would allow her to meet her burden via issue preclusion. Simply put, the issues decided in *Lewy*, *Campbell*, and *Collins* are not identical to the issue presented here or there was not a final judgment on the merits, and thus, whether the particular Model 700 rifle in this case is defective was not *actually* litigated in previous cases. Therefore, issue preclusion does not preclude litigation of whether the Model 700 rifle involved in this case is defective, and O'Neal's motion for partial summary judgment is denied.

## II.   Defendants' Motion for Summary Judgment

Defendants argue summary judgement should be granted in their favor for three reasons. First, defendants urge the court to exclude O'Neal's lone expert witness, and upon doing so, O'Neal no longer has the expert opinion necessary to establish a defect and causation. Second, defendants claim O'Neal cannot establish two necessary elements of her claims: (1) that a defect existed at the time the rifle left defendants' control, and (2) that there was not a substantial unforeseeable change to the rifle. And third, defendants claim

---

[3] O'Neal also must prove that the defect existed at the time it left Remington's control and that there had not been a substantial unforeseeable change in its condition. *Burley v. Kytec Innovative Sports Equip., Inc.*, 737 N.W.2d 397, 408-09 (S.D. 2007); *Peterson v. Safway Steel Scaffolds*, 400 N.W.2d 909, 912 (S.D. 1987); *Crandell v. Larkin & Jones Appliance Co.*, 334 N.W.2d 31, 34 (S.D. 1983); S.D. Civ. Pattern Jury Instructions 20-120-10 & 10-120-40 (2010). Each of these inquiries is specific to the particular Model 700 rifle that is at issue here.

O'Neal's destruction of the rifle has unfairly prejudiced defendants' ability to defend themselves to the point that she should not be able to pursue her claims. The court begins and ends its analysis with O'Neal's ability to establish her claims.

The four remaining claims in O'Neal's complaint are strict liability (defective design and/or manufacture), strict liability (failure to warn), negligent design and manufacture, and negligent failure to warn. Regardless of the theory on which O'Neal relies, she must prove that the rifle was in a defective condition and that the defective condition was a legal cause of the injuries. *See Burley v. Kytec Innovative Sports Equip., Inc.*, 737 N.W.2d 397, 408-10 (S.D. 2007) (setting out elements for strict liability and negligent product defects); *Robinson v. Brandtjen & Kluge, Inc.*, 500 F.3d 691, 697 (8th Cir. 2007) (noting the similarity between strict liability and negligence theories); *Peterson v. Safway Steel Scaffolds*, 400 N.W.2d 909, 912 (S.D. 1987); *Crandell v. Larkin & Jones Appliance Co.*, 334 N.W.2d 31, 34 (S.D. 1983); S.D. Civ. Pattern Jury Instructions 20-120-10 & 10-120-40 (2010). Defendants specifically argue that because she no longer has the rifle, O'Neal cannot show that a defect existed at the time the rifle left defendants' control or that there had not been a substantial unforeseeable change to the rifle, thereby making proof of causation impossible.

In its previous order denying defendants' motion for summary judgment, the court noted that plaintiff could establish the defectiveness of the rifle and

causation through circumstantial evidence. *O'Neal v. Remington Arms Co.*, 913 F. Supp. 2d 736, 740 (D.S.D. 2012). The court also noted that because discovery was still taking place, O'Neal could still produce evidence regarding whether the rifle was ever modified or altered. Discovery has since concluded, and O'Neal has not produced any additional evidence.

O'Neal has the burden of proving that there was not a substantial unforeseeable change to the rifle from the time it left defendants' control to the time of the accident.[4] Because O'Neal had the rifle destroyed before filing suit, meeting her burden on this element is difficult. O'Neal has brought forth evidence to show that the rifle was never modified or altered from some time in the 1980s (when Doug Swanson acquired the rifle) until the time of the accident. But the rifle was manufactured in 1971, and there is no evidence in the record regarding whether the rifle was ever modified or altered during the time period when it was first manufactured until the time Swanson acquired it, over a ten-year period. O'Neal admitted that she does not "have much information" on the history of the rifle. Docket 61-3 at 3. Similarly, Swanson does not know whether the rifle was ever modified or altered prior to his obtaining it. Docket 48-2 at 9. Moreover, there is no evidence that anyone inspected the rifle at any time since Swanson acquired it for the purpose of establishing whether it was ever modified or altered. In sum, over one-fourth of

---

[4] This showing goes to both the issues of defect and causation.

the time the rifle was in existence is entirely unaccounted for, and because the rifle was destroyed, O'Neal cannot show that the rifle was never modified or altered.

In her response, O'Neal correctly notes that under South Dakota law a plaintiff can use circumstantial evidence to establish both a defect and causation in a product liability case. *Crandell*, 334 N.W.2d at 34. Here, however, there is a complete lack of evidence such that a jury could only speculate and guess as to issues in which O'Neal bears the burden of proof, i.e., whether the rifle was in substantially the same condition as it was when it left defendants' control and whether that condition is a legal cause of the injuries. "To survive a motion for summary judgment, the nonmoving party must substantiate [her] allegations with sufficient probative evidence that would permit a finding in [her] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011). After a careful review of the record, O'Neal has failed to substantiate her allegations with sufficient probative evidence that would permit a finding in her favor on any of her claims.[5]

---

[5] Because the court finds in defendants' favor on its motion for summary judgment, it need not address defendants' motion to exclude the testimony of Charles Powell, plaintiff's expert.

**CONCLUSION**

O'Neal failed to direct the court to a previous judgment that actually and directly determined whether the rifle involved in this action was defective. Thus, issue preclusion does not preclude litigation of whether the rifle involved here is defective. Separately, O'Neal has failed to come forth with sufficient probative evidence to avoid summary judgment. Accordingly, it is

ORDERED that plaintiff's motion for partial summary judgment (Docket 45) is denied.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Docket 50) is granted.

IT IS FURTHER ORDERED that defendants' motion to exclude testimony of Charles Powell (Docket 47) is denied as moot.

Dated March 13, 2014.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

13